**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karina Kepler, et al., | No. CV-24-00220-TUC-AMM |
| Plaintiffs, | **ORDER** |
| v. | |
| NaphCare Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs Karina Kepler and Carlin Casey's Motion to Compel Discovery from the NaphCare Defendants. (Doc. 64.) Plaintiffs seek to compel Defendants NaphCare Incorporated, Registered Nurse ("RN") Jason Chamberlain, Nurse Practitioner ("NP") Leo Easley, medical doctor ("MD") Mikell Karsten, and mental health professional ("MHP") Matthew Woods (together "NaphCare Defendants") to supplement or produce discovery. (*Id.*) The motion is fully briefed. (Docs. 69, 71.) For the reasons addressed below, the Court will grant the motion in part and deny it in part.[1]

**I. Overview**

Plaintiffs, on behalf of the estate of Mary Faith Casey ("Ms. Casey"), bring claims pursuant to 42 U.S.C. § 1983 and Arizona state law against Pima County, Pima County

---

[1] NaphCare Defendants requested oral argument on the motion. (Doc. 69.) The Court has discretion when determining whether to grant oral argument. Fed. R. Civ. P. 78(a); LRCiv 7.2(f); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide the issue without oral argument if the parties can submit their papers to the court."); *Bach v. Teton Cnty. Idaho*, 207 F. App'x 766, 769 (9th Cir. 2006) ("Due process does not require the district court to hold oral argument before ruling on pending motions."). Here, because the parties have had sufficient opportunity to brief the disputes, the Court finds that oral argument is not necessary to decide the motion. NaphCare Defendants' request is denied.

Sheriff Chris Nanos, Dr. John Samaan, and NaphCare Defendants for allegedly providing Ms. Casey unconstitutionally deficient medical and mental health services in the Pima County Jail (the "Jail"). (Doc. 1.)

On January 8, 2025, a discovery dispute conference was held to discuss the disputed Requests for Production ("RFP") and Interrogatories pursuant to the Court's September 27, 2024 Scheduling Order. (Doc. 44 at 2–3.) On January 15, 2025, the Court ordered Plaintiffs to file a motion to compel. (Doc. 62.) Thereafter, the present motion was filed.[2] (Doc. 64.)

## II. Discussion

### A. The Scope of Discovery is Governed by Federal Rule of Civil Procedure 26.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). A party may propound interrogatories that relate to any matter that may be inquired into under Federal Rule of Civil Procedure 26(b). Fed. R. Civ. P. 33(a)(2). Factors courts consider in determining proportionality are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Importantly, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* District courts have broad discretion in resolving discovery disputes. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Hallett v. Morgan*, 296 F.3d 732, 751

---

[2] NaphCare Defendants request the Court deny Plaintiffs' Motion to Compel arguing it violates Local Rule 7.2(e) by exceeding the permitted page limit. (Doc. 69 at 3.) In the alternative, NaphCare Defendants request the Court allow additional briefing. (*Id.*) Local Rule 7.2(e) prohibits motions and responses from exceeding seventeen (17) pages, excluding attachments and required statements of facts. LRCiv 7.2(e). When a motion is brought pursuant to Federal Rule of Civil Procedure 37(a)(3)(B), as it is here, Local Rule 37.1 requires the moving party provide—separately from a memorandum of law—the discovery requested, the response received, and the reason(s) why the response is deficient. LRCiv 37.1. Plaintiffs' motion is seventeen pages, excluding attachments. (*See* Doc. 64.) Therefore, Plaintiffs did not violate LRCiv 7.2(e). Further, the briefing submitted by the parties is sufficient for the Court to evaluate the discovery disputes. NaphCare Defendants' request for additional briefing is denied.

(9th Cir. 2002).

Here, Plaintiffs request discovery regarding NaphCare's treatment of Ms. Casey, NaphCare's operating procedures, and NaphCare's treatment of other patients. As an initial matter, the Court will deny RFP Nos. 4, 19, 23, 27, and 34 to NaphCare, and Interrogatory Nos. 16 to NaphCare; 4, 6, and 7 to Defendant Chamberlain; 2, 4, and 5 to Defendant Easley; 5 and 12 to Defendant Karsten; and 4 and 12 to Defendant Woods. The Court finds these requests are likely duplicative, unduly burdensome, or disproportionate to the needs of the case. NaphCare Defendants' objections to these discovery requests are sustained. As to the remaining discovery requests, the Court addresses each in turn.

**B. Discovery Related to Ms. Casey's Treatment.**

First, Plaintiffs seek to compel the audit trail for Ms. Casey's electronic medical records (RFP 2). (Doc. 64-1 at 2.) Plaintiffs describe the audit trail as "a standard computer-generated medical record—commonly sought and produced in discovery in medical malpractice and related § 1983 cases—that contains time-stamped entries showing who accessed a patient's medical files, which files were accessed, how long they were reviewed, and whether additions, deletions, or changes were made to their medical record (and by whom, and when)."[3] (Doc. 64 at 9.) NaphCare Defendants object to the request as irrelevant, disproportionate to the needs of the case, overly broad, and not a part of Ms. Casey's medical records. (Doc. 69 at 15; Doc. 64-10 at 5.) Defendants argue that because audit trails "lack context, vary by software, and often require expert interpretation," compelling production of the audit trail would only unnecessarily complicate litigation and cause further disputes. (Doc. 69 at 16.)

Here, the audit trail for Ms. Casey's electronic medical records is relevant to Plaintiffs' § 1983 claims and proportional to the needs of the case. Plaintiffs allege Ms.

---

[3] In the discovery dispute conference, defense counsel clarified that the audit trail does not record how much time a provider spent in the medical record. The audit trail is a spreadsheet with data that includes the date the medical record was accessed, the user information of the account that accessed the medical record, and a rough approximation of what medical records were accessed. Healthcare providers are required to maintain an audit trail under HIPAA as a security measure "to prevent unauthorized access to patients' medical records." (Doc. 69 at 15 (citing 45 C.F.R. § 164.302).)

Casey's mistreatment was caused in-part by NaphCare Defendants' failure to properly review her complete medical records including her prescription medication history. The requested audit trail is a single spreadsheet, available to Defendants with minimal burden of production, and intricately connected to Ms. Casey's medical records and the treatment she received while in Defendants' care. The possibility that the audit trail *may* cause future discovery disputes or raise questions of interpretation for an expert does not outweigh its relevancy. Accordingly, NaphCare Defendants' objections are overruled.

**C. Discovery Related to NaphCare's Operating Procedures and Treatment of Other Patients.**

Plaintiffs bring claims under § 1983. Because NaphCare is a private entity acting under color of state law, it can be liable under the standards applicable to a municipal governmental body under *Monell v. Department of Social Services of the City of N.Y.*, 436 U.S. 658 (1978). *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). Under *Monell*, Plaintiffs must show, *inter alia*, that Defendants had a policy, practice, or custom that was the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). "[C]onsciously designed" and "routine practices" can amount to a custom or policy. *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc).

Here, because Plaintiffs allege NaphCare had a custom or policy of providing inadequate medical and mental health care, Plaintiffs request discovery related to NaphCare's operating procedures at the Jail, NaphCare's treatment of other patients at the Jail, and NaphCare's response to "serious adverse events" involving these patients.[4] NaphCare Defendants object to the requests as irrelevant, disproportionate, vague and ambiguous, overly broad, and unduly burdensome. (*See* Docs. 64-10, 69.) NaphCare

---

[4] Plaintiffs assert that "NaphCare is required to conduct mortality reviews for patient deaths and 'serious adverse events' and generate reports and paperwork related to them." (Doc. 64-1 at 8.) While the parties do not define "serious adverse events" or "adverse events," because NaphCare is accredited by the National Commission on Correctional Health Care ("NCCHC") and is obligated by contract with Pima County to follow NCCHS's standards for care, the Court infers that these terms are defined by contract or standard. (*See* Doc. 1 at 49.)

Defendants further object on the bases of work product doctrine, attorney-client privilege, Arizona peer review or quality assurance privileges, or the Health Insurance Portability and Accountability Act ("HIPAA").

NaphCare Defendants attempt to narrow the scope of discovery by framing Plaintiffs' case as limited to Ms. Casey, who "refused to eat and passed away nearly two months after her release from custody due to severe protein malnutrition." (Doc. 69 at 17.) With regards to the requested mortality reviews, NaphCare Defendants attempt to distinguish this case from those where a patient dies in custody by pointing out that "Ms. Casey passed away nearly two months after receiving care and treatment from NaphCare healthcare providers and being released from custody." (Doc. 64-10 at 10.)

In the Court's view, NaphCare Defendants' narrow scope cannot be reconciled with the allegations in this case. As Plaintiffs assert, this case is not limited in scope to Ms. Casey's refusal to eat. Rather, Plaintiffs allege NaphCare engaged in a widespread practice of failing to adequately intake, treat, and respond to patients with mental illnesses, which, in Ms. Casey's case, led to her deterioration and eventual death. The fact that NaphCare discharged Ms. Casey in a condition that necessitated direct release to hospice is reasonably comparable to cases in which death occurred while in custody. These allegations cast a broader net than Ms. Casey's personal medical records and warrant broader discovery. *See Wright v. S. Arizona Children's Advoc. Ctr.*, No. CV-21-00257-TUC-JGZ, 2023 WL 3595714, at *1 (D. Ariz. May 23, 2023) (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.46 (3d ed. 2023)) ("In civil-rights actions alleging violations of § 1983, federal policy favors broad discovery."). As such, records involving patients who died in the Jail or who sustained a "serious adverse event" at or near the time frame alleged in this case are relevant. NaphCare's response to those "serious adverse events" is equally relevant due to its deliberate indifference defense. (Doc. 16 at 46.)

To the extent that NaphCare Defendants object to discovery based on HIPAA, Defendants' objections are overruled. While HIPAA prohibits a covered entity from disclosing patients' protected health information ("PHI"), HIPAA allows for disclosure

pursuant to a protective order in this type of situation. *See* 45 C.F.R. § 164.512(e) (a covered entity may disclose PHI in any judicial proceeding pursuant to a court order or in response to a discovery request with a qualified protective order).

Likewise, NaphCare Defendants' objections based on Arizona state privileges, such as peer review and quality assurance, are overruled. The Ninth Circuit has made clear that federal privilege law governs in federal cases, even when state law claims are involved. *See Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005) (affirming the district court's order to produce the mortality review in a case involving the death of a prisoner and declining to create a federal peer review privilege because "[i]n these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided"); Fed. R. Evid. 501, Advisory Committee Notes 1974 Addition (where there are federal question claims and pendent state law claims present, the federal law of privilege applies); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 835 F.3d 1155, 1158 (9th Cir. 2016) (quoting *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014)) ("Where, as here, the same evidence relates to both federal and state law claims, we are not bound by Arizona law on privilege. Rather, federal privilege law governs.").

Further, to the extent that NaphCare Defendants object based on attorney-client privilege or work product doctrine under the Federal Rules, Defendants failed to follow the proper procedure to invoke these privileges. Defendants did not produce a privilege log specifically identifying what documents or pieces of information to which attorney-client privilege applies. Nor did Defendants submit evidence supporting what material it believes is protected by the work product doctrine. *Burlington N. & Santa Fe Ry. Co. v. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("[B]oilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege."). Thus, Defendants' blanket objections are improper and overruled.

Finally, NaphCare Defendants request the Court enter a protective order to "prevent ongoing misuse of the discovery process . . . shielding them from improper and oppressive

demands." (Doc. 69 at 2.) While the Court may for good cause issue a protective order pursuant to Federal Rule of Civil Procedure 26(c) to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," a protective order is not necessary at this time. Fed. R. Civ. P. 26(c)(1). NaphCare Defendants' request is denied. Nevertheless, the Court is mindful that NaphCare Defendants have spent substantial time meeting, conferring, and responding to Plaintiffs' requests, some of which are likely covered by ESI searches or overlap with other RFPs or Interrogatories. (*See* Doc. 69 at 2.) Plaintiffs are advised that while they may face a steep evidentiary burden to prove their *Monell* claims, the Court is not inclined to allow a fishing expedition disguised as a discovery request. *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021). As such, the Court narrows Plaintiffs' discovery as follows:

**RFP 2 to NaphCare**: The audit trail for Ms. Casey's electronic medical records.

**RFP 8 to NaphCare**: Any mortality review, morbidity report, root cause analysis, or serious adverse event review generated by NaphCare for the death or serious adverse event of any detainee at the Pima County Jail between January 1, 2022 and January 1, 2023.

**RFP 18 to NaphCare**: Any Corrective Action Plan ("CAP") prepared by NaphCare regarding its operations at the Pima County Jail between January 1, 2022 and January 1, 2023.

**RFP 20 to NaphCare**: Any internal audit and statistical healthcare report created by NaphCare regarding its healthcare services at the Pima County Jail between January 1, 2022 and January 1, 2023.

**RFP 39 to NaphCare**: Any training materials, including PowerPoint slides or handouts, on the following topics: Mental Health Scheduling and Referrals; Mental Health Screening; Emergency Psychotropic Medication; Mental Health Provider Portal; Chronic Care Provider Training; Medication Refusals; Facility Transfer Form; Weight Checks; When to Send Patient to the Emergency Room; Initial Safety Assessment; and Mental Health Professional Portal.

**RFP 47 to NaphCare**: Any Quality Improvement or Continuous Quality

Improvement Reports regarding NaphCare's operations at the Pima County Jail between January 1, 2022 and January 1, 2023.

**RFP 51 to NaphCare**: Any final expert report prepared by a testifying expert and produced by a plaintiff discussing NaphCare's intake processes or inadequate staffing in the Pima County Jail between January 1, 2022 and January 1, 2023.

**RFP 53 to NaphCare**: Initial assessments and screenings for all of Dr. Samaan's and NP Easley's patients between April 1, 2022 and October 1, 2022.

**Interrogatory 3 to NaphCare**: A description of NaphCare's management structure.

**Interrogatory 11 to NaphCare**: A record of every person who had responsibility for investigating Ms. Casey's treatment and decline at the Pima County Jail.

**Interrogatory 22 to NaphCare**: A record of the people in NaphCare's leadership for medical and mental health services in the Pima County Jail between September 15, 2021 and August 19, 2022, and a description of their responsibilities.

**Interrogatory 23 to NaphCare**: A description of the policies and procedures used in the Pima County Jail between April 1, 2022 and August 19, 2022 to determine an incoming patient's medical history, to obtain medical records, and to determine current or previous prescription medications.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Compel Discovery from the NaphCare Defendants is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 64.)

**IT IS FURTHER ORDERED** that Plaintiffs' motion is **DENIED** with regard to RFP Nos. 4, 19, 23, 27, and 34; and Interrogatory Nos. 16 to NaphCare; 4, 6, and 7 to Defendant Chamberlain; 2, 4, and 5 to Defendant Easley; 5 and 12 to Defendant Karsten; and 4 and 12 to Defendant Woods. (Doc. 64.)

**IT IS FURTHER ORDERED** that NaphCare Defendants shall have up to and including **June 13, 2025** to provide Plaintiffs with full and complete responses, as modified by the Court above, to RFP Nos. 2, 8, 18, 20, 39, 47, 51, and 53, and Interrogatory Nos. 3,

1  11, 22, and 23 to NaphCare. When necessary to protect PHI, the production shall be
2  pursuant to a protective order. Any documents or information withheld from NaphCare
3  Defendants' discovery responses on the basis of privilege must be identified in NaphCare's
4  discovery responses and/or privilege log.
5      **IT IS FURTHER ORDERED** that the results of all ESI searches shall be produced
6  by **June 13, 2025**.
7      Dated this 20th day of May, 2025.

_____
Honorable Angela M. Martinez
United States District Judge